UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINTELLO ALEXANDER,

           Petitioner,

v.                                         CASE NO. 04-CV-74510-DT
                                         HONORABLE GEORGE CARAM STEEH

KENNETH MCKEE,

           Respondent.
_____/

## OPINION AND ORDER
## DENYING HABEAS CORPUS PETITION
## AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Lintello Alexander has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state convictions for armed robbery and possession of a firearm during the commission of a felony (felony firearm). Having reviewed the pleadings and the state court record, the Court concludes that Petitioner's claims lack merit. Accordingly, the habeas petition will be denied.

### I. Introduction

Petitioner was charged in Wayne County, Michigan with two counts of armed robbery, one count of assault with intent to commit murder, MICH. COMP. LAWS §750.529, and one count of felony firearm, MICH. COMP. LAWS § 750.227b. The facts leading to these charges have been summarized by the Michigan Court of Appeals as follows:

> Defendant purchased a used automobile from Cars Plus in Detroit. About a week later defendant returned to the dealership and stated that he wanted to sell the van back. Defendant and Joseph Thomas, the manager of the dealership agreed upon a price. Thomas paid defendant, but stated that he would have to

>apply for a state tax refund for the remaining approximately $300 in sales tax paid. One week later defendant returned to Cars Plus and asked Thomas for the money. Thomas informed defendant that he had not yet received the refund from the state but gave defendant $100 from his personal funds.
>
>Defendant returned to the dealership and requested the rest of his money from Thomas. When Thomas explained that he did not have the money yet, defendant grabbed the victim and demanded the money. A fight ensued and during the melee Thomas grabbed his gun out of an open drawer in his desk. Defendant knocked Thomas to the ground, commandeered the weapon, and put the gun in Thomas' mouth. Defendant said "where's the money?" After Thomas responded that there was money in his pockets, defendant ripped out Thomas' pockets and took two thousand dollars and his cell phone.
>
>On his way out of the office, defendant encountered Tommy Lee Anderson, a customer looking at cars in the lot. Defendant approached Anderson and asked him about a salesman. Anderson responded that he did not know the location of the salesman. Defendant then showed him the gun and asked him for money saying "give it up or I'll blow your brains out." Anderson complied and gave defendant the money from his pocket amounting to $60. Defendant accused Anderson of having more money and poked him with the gun. Anderson showed defendant that he did not have any more money in his wallet. Andersen testified at trial that defendant then ran off and robbed another person.

*People v. Alexander*, No. 244274, 2004 WL 119105, at *1 (Mich. Ct. App. Jan. 13, 2004) (unpublished opinion).

Petitioner's defense was that he was not guilty because he held a good faith belief that the money belonged to him and because he did not possess a felonious intent to rob or assault either victim. He testified somewhat differently from the version of the facts quoted above. He claimed that he paid $4,700 for a truck and after seven days one of tires began to wobble. He took the truck back to Cars Plus and received $1,500 in cash from Mr. Thomas. Because he was on his way out of town, he told Mr. Thomas that he would obtain the rest of the money later. However, when he returned to Cars Plus, Mr. Thomas gave him $200 for the license plate fee and told him to return in a few days. He went back another time and received an amount

equivalent to the taxes he had paid. The altercation occurred on August 27, 2001, when he went back to the dealership still another time. He approached Mr. Thomas when Thomas started to pull a gun out of his pocket. The gun went off as he (Petitioner) grabbed it. Mr. Thomas then gave him $1,000 and told him to leave. On his way out of the dealership, he grabbed the money in Mr. Anderson's hand and left.

Petitioner denied pointing or firing a gun at Thomas. He also claimed that he was not trying to hurt Thomas. He admitted signing a statement that a police officer took from him, but he claimed that he did not read the statement before signing it.

The assault charge was reduced to felonious assault after Joseph Thomas testified that he did not think Petitioner was trying to kill him. On April 29, 2002, the jury acquitted Petitioner of felonious assault, but found him guilty of two counts of armed robbery and felony firearm. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of forty to sixty years in prison for each of the armed robbery convictions.

In an appeal of right, Petitioner argued that (1) he was denied effective assistance of counsel because his trial attorney failed to move to suppress his confession and (2) the government committed misconduct by failing to provide the defense with a copy of an evidence technician's report before trial. The Michigan Court of Appeals was unpersuaded by these arguments and affirmed Petitioner's convictions. *See id*.

Petitioner raised the same issues in an application for leave to appeal in the Michigan Supreme Court. He also argued that his statement to the police should not have been admitted in evidence because it was involuntarily made. On June 30, 2004, the state supreme denied leave to appeal because it was not persuaded to review the issues. *See People v. Alexander*, 470 Mich.

888; 682 N.W.2d 90 (2004) (table).

Petitioner filed his habeas corpus petition on December 1, 2004. The petition alleges that Petitioner's convictions were obtained by the use of a coerced confession and by the prosecution's failure to disclose favorable evidence.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct

unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III.  Discussion

### A.  Petitioner's Confession

The first habeas claim alleges that Petitioner's conviction was obtained by the use of a coerced and involuntary confession. The confession or admissions occurred when Sergeant Otha Craighead visited Petitioner in the hospital and asked him about the robbery. Petitioner was hospitalized for a gunshot wound, which he sustained in an unrelated incident where he was the victim. He contends that his statement to Sergeant Craighead should not have been admitted in evidence because he was in pain and under the influence of medication at the time.

The Michigan Court of Appeals adjudicated this claim in the context of an ineffective-assistance-of-counsel claim.[1] The court of appeals found no error, because there was "no

---

[1] Petitioner did not raise his first claim as a separate issue in the Michigan Court of Appeals. He raised the claim for the first time in the Michigan Supreme Court.

The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims to each appropriate state court before raising those claims in a federal habeas corpus petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review in the state's supreme court when that review is part of the state's ordinary appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). Presentation of a claim for the first and only time to a state's highest court on discretionary review, without more, does not constitute "fair presentation" for purposes of the exhaustion doctrine. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

The exhaustion requirement "is not a jurisdictional one," however, *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005), and courts may deny a habeas petition notwithstanding the failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2). Petitioner's claims lack merit, and his unexhausted claim was largely subsumed by his ineffective-assistance-of-counsel claim in the

evidence that [Petitioner's] statement was not given as the product of a free and unconstrained choice. . . ." *Alexander*, 2004 WL 1119105, at *2.

"[A] confession cannot be used if it is involuntary." *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990) (citing *United States v. Washington*, 431 U.S. 181, 186-87 (1977), and *Michigan v. Tucker*, 417 U.S. 433, 440-41 (1974)). However, "[e]vidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process . . . ." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Courts must look to the totality of the circumstances when determining whether a confession has been elicited by unconstitutional means. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994). "Factors considered in assessing the totality of the circumstances include the age, education, and intelligence of the defendant; whether the defendant has been informed of his *Miranda* rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep." *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir. 2006).

The Court estimates that Petitioner was thirty-nine years of age when Sergeant Craighead interviewed him in the hospital. Sergeant Craighead testified that Petitioner was sitting in bed

---

Michigan Court of Appeals. Therefore, to the extent that Petitioner has not exhausted state remedies for his first claim, the Court will excuse the error.

with the television on and that he had been served lunch. Sergeant Craighead looked at Petitioner carefully and concluded that Petitioner was uncomfortable, but not suffering or "out of it or anything like that."

Sergeant Craighead advised Petitioner of his constitutional rights. Petitioner said that he could read and write, and Sergeant Craighead was satisfied that Petitioner was literate. Petitioner waived his rights and signed a waiver-of-rights form indicating that his statement was voluntary.

The conversation that followed was clear and lucid. Petitioner made no complaints about physical ailments or needing anything, and he did not appear to be under the influence of drugs, medication, or alcohol. In fact, Petitioner asked Craighead why he was there, and when the sergeant explained that he was investigating the crime at the auto dealership, Petitioner proceeded to tell Craighead what had happened.[2] (Tr. Apr. 25, 2002, at 184-91.)

The Court concludes from the facts as summarized above that Petitioner's cognitive and volitional capacities were not impaired and that there was no police coercion. Thus, it was reasonable for the Michigan Court of Appeals to conclude that Petitioner's confession was voluntary. The state court's conclusion was not an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts. Petitioner has no right to relief on the basis of his first claim.

## B. The Prosecutor

---

[2] Petitioner informed Sergeant Craighead that there had been a dispute over money and that he wanted his money from Mr. Thomas. A fight ensued and a gun went off in his hand while they were fighting. He was upset, but he did not try to kill Mr. Thomas. He took the money owed him and left. He thought that he remembered robbing a second person, and he expressed remorse for the incident. (Tr. Apr. 25, 2002, at 191-93, 201, and 203-04.)

The second and final habeas claim alleges that the prosecution failed to disclose an evidence technician's exculpatory report before trial. This claim arose during police officer William Niarhos' testimony. Officer Niarhos was an evidence technician, who went to the crime scene with Officer Donna Bibij to collect evidence. During the prosecutor's direct examination of Niarhos, defense counsel asked about the paper that Niarhos was holding in his hand. Niarhos responded that the paper was an evidence report that his partner had prepared when the two of them investigated the scene of the robbery. Defense counsel asked to see the report. The trial court permitted the prosecutor to finish his direct examination of Niarhos, but defense counsel was permitted to see the report before he cross-examined Niarhos. (Tr. Apr. 25, 2002, at 129-31.)

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A true *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985)).

It is undisputed that the prosecutor did not give defense counsel a copy of the evidence

technician's report before trial. However, Petitioner conceded in his state appellate brief that the report was not favorable to him. He merely alleged that the report might have been favorable to the defense if the prosecution had disclosed it to defense counsel earlier.

In addition, *Brady* applies only to a complete failure to disclose, not tardy disclosure during trial, unless the defendant has been prejudiced by the delay. *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (quoting *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986)). Petitioner was not prejudiced by the delay, because his attorney merely asked to see the report, and he was permitted to review it before cross-examining Officers Niarhos and Bibij.

Furthermore, the report was "not wholly within the control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Officer Bibij thought that her report was placed in the court file. (Tr. Apr. 25, 2002, at 148.) "There is no *Brady* violation 'where a defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory information," or where the evidence is available . . . from another source,' because in such cases there is really nothing for the government to disclose." *Coe,* 161 F.3d at 344 (quoting *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)); *see also Spirko v. Mitchell*, 368 F.3d 603, 611 (6th Cir. 2004) (holding that, "because the evidence was available to [the habeas petitioner] from other sources than the state, and he was aware of the essential facts necessary for him to obtain that evidence, the *Brady* rule does not apply"), *cert. denied*, 544 U.S. 948 (2005).

Petitioner has failed to allege a true Brady claim. Therefore, the state court's conclusion that no *Brady* violation occurred was not an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.

9

## IV. Conclusion

The state appellate court's adjudication of Petitioner's claims was objectively reasonable. Accordingly, the application for a writ of habeas corpus is DENIED.

The Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: July 6, 2006

> S/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 6, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk